Good morning, Your Honor. Counsel. Your Honors, this court reviews the current case of a grant of summary judgment. It does so de novo. And jumping right in to the elements of a case involving the Driver's Privacy Protection Act. The elements would include that a defendant knowingly obtained a plaintiff's personal information without a lawful purpose. The act enumerates the specific lawful purposes which include a law enforcement agency carrying out its functions and some other government function exceptions. Protected information includes a person's address, telephone number, driver's license number, and highly protected information like their social security number. In this case, the district court granted summary judgment and framed the plaintiff's burden this way. Said that Mr. Hedquist needed to show case law demonstrating that Walsh, the defendant's actions in running a TLO search to determine Hedquist's residency and whether he may have committed the penalty of false swearing do not fall under a DPPA exception. There are two big problems with this formulation by the district court. First, it is absolutely plaintiff and appellant's position that the words of this statute enacted over 20 years ago and signed into law by President Clinton are specific enough to establish clearly the law applicable to conduct and circumstances involved in this case. Well, would you agree that for purposes of qualified immunity, we've been admonished numerous times by the Supreme Court that we don't determine the clearly established prong at that level of generality. We have to look at the particular conduct. I do agree. What I also would agree is that I have not been able to point to a case where a city manager instructs a chief of police to search for information on a city council person in order to oust a political rival. I cannot find a case of that particularity. And doesn't that then mean that we should affirm the district court because it's your burden to find clearly established law from either the Tenth Circuit or the Supreme Court that supports your position? I think that's a valid argument, but I also think it's one that is upset because cases have said specifically about the DPPA, the statute that we are discussing. I mean, this isn't a big, broad statute like, say, Section 1983, right? This is where we really talk about good faith and what it means to violate constitutional rights. This is a multi-level statute that specifically enumerates exceptions, that talks about exactly what personal information is. So what you're arguing is that the statute itself is the clearly established law. It's clear on its face. Absolutely. You don't need it. If you have a statute that's clear on its face, not only do you not need a case that says exactly what the statute says, but it's highly unlikely that there would be such a case because people would follow the law, right? Exactly. And interestingly enough about this statute, it contains both a civil and criminal prong. And the criminal side of this, wherein the government has sought to charge people with crimes, there has been void for vagueness challenges brought against this statute, which have been disagreed with by courts in both the 11th and 7th Circuits that I have found. Rejected. Exactly. But the terms in the statute aren't that clear. You know, the permissible use is talking about whether it's in connection with any civil, criminal, administrative, or arbitral proceeding in federal, state, or local court or agency before any self-regulating body, including the service process, investigation and anticipation of litigation, blah, blah, blah. I mean, it isn't that you can say, oh yeah, this fits here. That's pretty vague. And, you know, they're arguing that they had a legitimate investigative purpose here to find out whether the councilman was violating an ordinance to live in the district for which he serves, right? Respectfully, Your Honor, I would not agree that it's vague. I would agree that it's broad. Meaning government can... Well, vague or broad, the Supreme Court says we can't determine, we can't deny qualified immunity based on vague or broad principles. We have to narrow them. I think what the court just said about good faith immunity is that we must give a defendant good faith immunity when the law has not clearly established or put them on notice that conduct is lawful or unlawful. So in this case... So can you point me to any case that you cited that, from the Tenth Circuit or the Supreme Court, that you cited that the use of substance information in order to determine whether Mr. Hedquist lived in the district for which he was serving on the council was an inappropriate use of that information? I cannot point you to a case that says that. And isn't that the answer? I do not agree that it is for this reason. Because good faith immunity is about putting a defendant on notice that conduct is unlawful or unlawful. Not only should this defendant have known that this conduct was unlawful, he did know. He testified in multiple sworn depositions that he did, in fact, know that this was unlawful. This was not a proper use of police resources. But don't we evaluate the second prong of qualified immunity based on a standard of objective reasonableness? The objective prong. So let's dive right into what the statute says and... Well, I mean, I'm sorry, so am I correct about that? That's correct. Okay. I do have a follow-up question to Judge McHugh's last question. And that is, from the summary judgment evidence, it seems that you're arguing that Mr. Walsh had a political purpose. Your adversaries are arguing that Mr. Walsh's purpose was to determine Mr. Hedquist's criminal purpose. And that would fall within one of those two exceptions. A criminal act or an administrative purpose, the administrative purpose exception. The anomaly here is that political purpose, to have Mr. Hedquist removed from the city council, is also the purpose to determine whether or not he committed a crime or committed or fell within that administrative exception. So it seems to me that the question that I'm struggling with is, if you have a dual purpose, is there a case law that would put Mr. Walsh on notice that if you have a dual purpose, one purpose is legitimate, one is illegitimate, would he be alerted to the fact that that would be a violation of the DPPA? I think the circuits are split on whether, and I think the Ninth Circuit is the circuit that hangs out there that says if you have both a permissible and an impermissible purpose, then that permissible purpose can override an impermissible purpose. The remainder of the courts that have addressed the question say, if there is an impermissible purpose, the plain language of the statute says, even if you had, you know, another, then you can point to this, that this is fine, that you don't escape liability under the statute. Do you agree that the summary judgment evidence would compel a fact finder to determine that Mr. Walsh had a dual purpose? I do not. How could a fact finder conclude from the summary judgment evidence that Mr. Walsh had a purpose other than determining his residency? All of the evidence that you're pointing to refers to determining his residency. I think what's important to remember is that the determination of residency was a means to an end. The purpose was the removal of a political rival from political office. By determining his residency. If that worked. If you look at the transcript of the phone call between Mr. Patterson and Chief Walsh, he says, I've got everything from past and present, house, land, persons, associations, all that kind of stuff. So this wasn't just a residency determination. In need of using the simpler CAD or Spillman system the police department uses for dispatch and those types of things. A few moments before he ran the TLO search. He ran the TLO to get additional discrediting information on a political rival that came along with his social security number, his associations, his mother's neighbors and their phone numbers. All kinds of information that should offend the conscience of anyone looking at it. And it does, at least my conscience, get affected. Let me ask you this. Is there any statute or any ordinance upon which you understand the police were investing themselves or injecting themselves into this question of the residency of a councilman? For purposes of removal of the councilman? Generally, I think that's a little bit of a red herring of an argument. On a very legal basis, I think there are laws related to campaign swearing and actions during campaigns. The campaign was long over. In fact, at the time of the campaign, Chief Walsh said there was no legal reason to search for this information. The only thing that could apply in the CASPER city ordinance just says a city councilman shall live in the ward in which they are elected. There is no criminal provision. There is no criminal penalty. There is nothing. There's not even a civil penalty. Is there any police manual or any custom or practice that requires the police to vet the residency of councilmen? Absolutely not. But I think what's even more important here is that this idea of investigating the penalty of false swearing didn't arise until this case came about in 2018. We had multiple opportunities to ask Mr. Walsh about his purpose. Through two depositions, the city testified in their 30B-6 that Walsh had never provided information to Mr. Patterson, when in fact he had on multiple occasions and obtained Mr. Hedquist's information on multiple occasions, even when he maintained that he didn't, such as in the 2012 searches. It's the question for qualified immunity for Mr. Walsh. If we find that there was a dual purpose, I think you've earlier indicated that there was a circuit split. I think you haven't said it, but I think we'd agree that there's no 10th Circuit case, sort of a precedential 10th Circuit opinion weighing in on that circuit split, and we haven't weighed in, then under the clearly established prong, if there was a dual purpose, he would get qualified immunity. If we find that a fact finder could find that he had solely an improper political purpose that would not fall within one of those two exceptions that have been identified, then you would say a fact finder could conclude that he had a solely improper political purpose and that he would have been alerted by the face of the statute that that would be impermissible. The whole issue would turn, would it not, the way that we find that a fact finder could conclude that there was a dual purpose or not. Do you agree? You know, the question of dual purpose isn't something that I strongly consider because what I think we're talking about here in good faith and the summary judgment standard is that we're dealing with probably a mixed question of law and fact. In questions of good faith and community, the parties agree as to what happened, and then we can find an applicable case. Then we're on the track of good faith as a matter of law. Here, the parties do not agree that the record agrees on what happened in this case. Do I believe that a reasonable fact finder could find that Mr. Walsh had a solely political purpose? Absolutely, and I think the record supports that. But even if you did, even if that were the case, and there isn't evidence from which the jury could have found that it was a legitimate purpose, in Boz v. Fulis, the Eleventh Circuit seemed to find no problem with using the driver's license information for political purposes, to lobby. You know, we don't have a Tenth Circuit case at all on this issue, and you have not presented any cases from anywhere that support your position. The closest case we have seems to go contrary. I'm not familiar with the case, Your Honor, but... It's the motorcycle gang case. It's cited in the briefs. They got the pictures of the people who were members of the motorcycle club, and they used it to petition against an open carry bill at the state legislature, and the members of the club were very upset that their personal driver's license information was used for this political purpose without their permission to then go up and show pictures of them, you know, that they're going to openly carry, and therefore you can't have this law. Look at these scary guys. The Eleventh Circuit said there's no problem with that. That's a legitimate political interest of the police department. Your Honor, if it's okay, I'm going to reserve some time, and we can discuss that when I stand back up. Thank you. You're welcome. And we'll add an extra minute to your time. Good morning, Your Honor. You two are splitting your time, is that correct? We are. Okay, the clock is yours. I'm the master of my own clock. Thank you. I'm the master of your own destiny. May it please this honorable court and counsel, who is coincidentally my friend, I am Anna        I'm Anna Olson. Thank you. May I please record? I'm Kaylin Vestal. I represent the city of Casper in this litigation. I would like to talk about the vicarious liability issues. I'd also like to talk a little bit about Spillman. But before I go into that, I want to address the subject you were on right before we closed. The Spillman materials include materials only that someone in Natrona County has put into it. Excuse me, I didn't hear that. All that shows up in Spillman is what people in Natrona County have put into it. So if the last time he was pulled over or called the police department or had an interaction with the fire department, if the last time he was pulled over, his address at that point in time would be what you would find in Spillman. TLO is much broader than that. TLO does access DMV, but it also accesses the assessor's office and a number of other things that are not protected by the DPDA. And when you go into TLO, you see all of the properties that he owns to see whether this house that was in question is a house that is owned by him, which increases the likelihood that he may be living there. So you get a great deal more information from TLO than you get from Spillman. We also have a number of different courts who have said the breadth of the search is not what you look at when you're looking for a DPDA violation. You're looking at whether it's put to a use. Ballard v. Oklahoma and the Camara case, both out of the University of Connecticut, have both pointed that out, that just because the search is broader than what you need does not make the search inappropriate under the DPDA. Well, our test for summary judgment appeals is whether there's a material dispute in the evidence, correct? Correct. Now, there's all kinds of dispute here. I mean, we could, I guess, buy your theory of the case 100 percent and reject the other aspect of the case 100 percent. But if we find that there is a dispute, our job is to reverse, send it back, and let the fact finder make that determination, right? There is no dispute of material fact. What's the one that there's no dispute about? Well, there is no dispute that he looked this up to find out where Councilman Headquist lived to see if he was in his ward. He has said that from day one on. And the argument, as I understand it, is that the reason that that was done was for a political motive of getting rid of a troublesome politician. The reason that was done was to see whether the Councilman could remain in his seat. And that is a legitimate government fact. Well, I was on a panel, I'm familiar with Mr. Headquist. You know, he's a pretty controversial character. I ruled against him once already. But that doesn't mean he's wrong this time. I understand. And as Judge McHugh points out, I mean, there is plenty of evidence in this record that suggests that precisely what he suggested is, in fact, what happened. That they're trying to get rid of this little pesky little character. Your Honor, my point is that the material facts, the facts that matter for a DPP analysis, are not in dispute. He's never said I searched for some other reason. He said I've searched to see whether somebody else says he did. But there's plenty of other witnesses who say he did search for improper reasons. Isn't this the chap, Mr. Walsh, who called Headquist a wing nut? He called everyone on the city council a wing nut. Did he call Headquist a wing nut? He did, indeed. And he avoids using his name to be in an effort to, quote, be a little vague. In that recorded call with Harrison. Right. Right. So there's plenty of dust on the other side of this that could lead a jury to just the opposite conclusion. A jury can certainly conclude that Chief Walsh did not like Councilman Headquist. That does not meet what the plaintiff needs to show in order to prove the DPA act. Let me make sure I understand your position. Your position is that even if a jury could find that the motivation here was to get rid of Headquist because he was a wing nut, that because they always said the way we were going to get rid of him was to check and see if he really lived in his ward, that somehow that's a proper purpose and therefore there's no dispute. I don't believe Chief Walsh's motivation is a material fact in a DPPA violation. That's what I'm asking. The question is, was it used for permitted use under the statute? So you're saying the purpose is irrelevant. Their motivation, what's in their head, their subjective intent is completely irrelevant. All that matters is, was the information sought for a legitimate purpose under the statute? The only scienter requirement in the statute is that they knowingly access the information. I don't understand the, and I'm trying to be difficult, but I just, I literally didn't understand the answer to the question. How can it be irrelevant of what is in Mr. Walsh's mind if you're relying on two exceptions that are predicated, as you just put it, for the purpose of a criminal investigation or for an administrative purpose? Purpose, it connotes to me what is in the person's mind, their intent. So I'm not sure how, so I'm not trying to argue with you. I just didn't, I literally didn't understand. Well, I think possibly the court in the Lancaster case laid it out a little bit better than I'm apparently doing. The court in that case was dealing with a police officer who had accessed material. It was against the rules of the department for him to access it. He actually got fired for accessing it, but he took that information. He gave it to a friend of his who gave it to the litigant in a divorce case, and she used that information in her divorce, and the court said no EPA violation. Thank you, counsel. Your time's been up, actually, for a minute. I'm sorry, Your Honor. But is there any way to answer the last question? Sure. I just have one question. You were, I think you started by saying that you were going to address the curious liability of Casper. My question is something that I really didn't understand, frankly, from your side's briefs, is Judge Johnson granted qualified immunity, as I read his opinion, to the city of Casper. He said the defendants get qualified immunity. Well, we all know municipalities never get qualified immunity. They are not entitled to qualified immunity. That is only something that is enjoyed by an individual, but he did, and it probably surprised everybody because you really, in your motion for summary judgment, never argued that, or at least I read your brief for summary judgment, and you really didn't argue that. So just one second, Judge. We are now two minutes over, and I have an absolute rule when I'm presiding. We're given the litigants 15 minutes. I try, if we go over, to add time to the other side to go, but it can eventually come into a Donnybrook. I'm afraid that you did not address the issue. Your time is up, and as the presiding officer today, I'm saying time's over. We'll have to read the briefs on that point. Thank you. Thank you, Your Honor. Counsel, we'll have two minutes added to your time instead of one, and that is the full extent of your time. If you would respect the clock, please. An interesting point from the panel during counsel's argument was the purpose of the DPPA. If you look into the history, it's to deal with things like stalking and harassment. Now, this is not the ski mask-wearing burglar in the bushes trying to find someone's address. This harassment wears a suit and a tie, but it doesn't mean it's any different, and it doesn't mean it's not a purpose of the act to deal with. I think the most important thing that I want to emphasize is that the court incorrectly accepted one factual scenario, one scenario that was clearly undermined by the record. In fact, I would argue the weight of the record goes against when it formulated the standard for summary judgment. And I would direct the court to one case that we cited in our reply, Malik, and it is just a District of Minnesota case. I don't even think it's actually reported, but what that court did is go through the actions by a law enforcement officer as to various purposes asserted and multiple claims. This was a case involving multiple claims, unlike the one that we have here, and say a proper purpose was here. It wasn't here. This was what was going on with this particular search, and this is why this was or wasn't a proper purpose. I also want to be clear that we have alleged that there was a political purpose, but also that there was a personal one. These were gentlemen who clearly didn't like each other, and in the record there's also e-mails from Chris Walsh to Mr. Patterson about a few short months after this all occurred, where Walsh blamed Hedquist for rumors of Walsh's extramarital affair and says to Patterson, I think this is another Hedquist attack. This is a tough time, and it is because of Hedquist. And Mr. Patterson replies, karma has a way of making things right. Sometimes we can help karma along. And that's at 470. Now, a personal reason, and this goes to your question about the motorcycle club case. Number one, those are photographs, which I think are also protected under the Act and may or may not be distinguishable. That's obviously a challenging case for us to deal with. But the personal nature of this, in addition to the political, they sought to bring about a political end, but this was really a personal smear campaign. As indicated by the scope of the search, they would like for you to ignore the scope of the search and ignore the number of searches, the frequency of searches, the different number of people that did them, the personal relationship between these parties, which are cited as factors in the case law, to help us understand the purpose of an action, of conduct. They want you to ignore those things because they all fall on the side of denying good faith and unity. And I think what we ought to ask ourselves is, was this a law enforcement officer who acted in good faith? Thank you, and your time is up. Thank you. Submitted counsel. Sorry, all good things must come to an end. I'd like to take a break. Break time. Thank you.